Our second case this morning, it won't be as long as the first I guarantee you, is United States v. Whitted, No. 15-3752, Ms. Levin and Mr. Zossmer. You may be ready. Thank you, Your Honor. May it please the Court, Sarah Levin on behalf of Mr. James Whitted. And I'd ask for three minutes please for rebuttal. Even though, thank you, even though Mr. Whitted's docket showed that no other notice was provided to him, the district court found that he received the notice and it made that finding without holding a hearing. It made some unsupported finding that Mr. Whitted must have received the instructions that accompanied the Form 2255 motion. Now even if Mr. Whitted received those form instructions and there's no evidence that he did, the instructions do not satisfy Miller's requirements, which remain vital following the Supreme Court's decisions in Castro and Implier. I thought, excuse me, I thought that, I understand your argument that there's nothing in the record and he made a phone call and was told that this was, the two pages, two missing pages were part of the transmission. But are you saying that even if it had been sent, it wouldn't satisfy the requirements here? That is, if the two pages had been included? That's right, Your Honor. Even if those two pages were sent, there's a caution in those two pages that the government is saying satisfies Miller notice. And that caution says that you should state your grounds for relief in this petition or you may be barred from presenting additional grounds at a later date. That's not the very clear three options that Judge Becker laid out in Miller. There's no time frame also that's provided for the response. It looks like here the Eastern District's practice is that no matter what style of a post-conviction motion, or rather anything but a 2255 on the form, it sends along this form saying, here, this is the option we want you to choose. And so not only do I think that that caution doesn't satisfy Miller, I think that by sending this form petition and saying no matter what your, whether it was a 60B or whatever the form of the pro se filing, that the district court by sending this form is now saying you must choose this option or another. And I think in that respect it's providing advice that's inconsistent with Plyler. It seems like you've got four hurdles to overcome here and they're all significant. You've got to show that the case that you want to rely on, Rosemont, is applicable to a conviction for a conspiracy under Pinkerton and there was a Pinkerton jury instruction. You've got to show that Miller notice is required for a petition initially styled as a 2255 petition. You've then got to show that he wasn't given that Miller notice and the court made a factual determination here. And then finally, you have to show that Miller wasn't overridden by Plyler. That's a tough road to hoe. I think this court recognized that there's a reason to believe... Was there a Pinkerton instruction? Yes, there was a Pinkerton instruction that was given, but that's not the conviction we have. We have a conviction for aiding and abetting. We have an indictment charging aiding and abetting. We have a verdict form referencing an aiding and abetting charge on the indictment. And then we have a judgment and then we have an amended judgment that all reference aiding and abetting. This court's opinion on direct appeal talks about an aiding and abetting conviction. And even in this certificate of appealability, we have reference to an aiding and abetting conviction. I think we wouldn't be here. But Pinkerton is, what, vicarious liability, right? Correct. And I realize our decision on that, Stubbs, is not an NPO, not presidential opinion. Doesn't that really lay the groundwork for that if you have a conviction for vicarious liability in connection with this particular 924C violation, that's it? You may be right on Rosemont for the moment, assuming it applies retroactively, but it doesn't make any difference. How do you respond to that? Well, I think Stubbs, and like the district court's opinion here, excuse me, like this court's opinion affirming on direct appeal, that's a sufficiency of the evidence question there. They're affirming a denial of a Rule 29 motion for a 924C count. And in the sufficiency of the evidence context, you're drawing all inferences in the government's favor, and you're only asking whether there's substantial evidence to support a verdict. That's not the question. Didn't this court say that it was sufficient? Yes. In the previous case, even though it wasn't published, but it still allowed the case. I think Stubbs is the tarot. In that context, yes, that's correct. But that doesn't answer the question here of had Rosemont instruction been given to the jury, had the jury been required to find the element of advanced knowledge, the question here is whether there's a doubt, whether the court can be sure, or only a very slight risk that that wouldn't have had either an effect or an influence on the verdict. And that's not the question that was answered in Stubbs, and that's not the question that was answered on direct appeal, which is why that doesn't answer the question today. And turning to Brecht, we see that the standard here, the question here for this court, is whether there's great doubt about whether the jury would have reached the same verdict. You look at the trial environment. I guess what I'm saying at the outset, if take the Rosemont requirement of advanced notice off the table, and it was just a vicarious liability instruction under Pinkerton, and would he nonetheless have been convicted? But let's say an instruction regarding aiding and abetting was never given. What would happen here? I still think the approach for this court is the same, because if there's a conviction for aiding and abetting, and then a petitioner raises a Rosemont challenge, then this court must approach that question under the proper standard, which is not sufficiency of the evidence. The proper standard is Brecht. And the question is whether, when all is said and done, if the court is sure that the error didn't influence the jury, or only had a very slight effect, then the verdict and the judgment should stand. That's in the Washington case that's cited in the opening brief at page 43. Here you have the Rosemont error is not harmless, because there is or there must be an effect on the jury, because there's no evidence offered at trial from any witness or in any form to show that Mr. Witted knew that Michael Harris would have a gun with him on September 15th in that hotel room. Even the trial judge on the record says there's very scanty evidence, and then he corrects himself and he says, actually there's no evidence that Witted knew there was a gun there that day. And that says there would be a grave doubt here. There would be more than just a slight risk that had a Rosemont instruction been given, the outcome would have been different. Did Rosemont discuss the paper as an issue at all? No, not in the Supreme Court's opinion. But we have twice, and another circuit has done it as well, and they say if you have one, you have a conviction of 924C. 924C doesn't say any diabetic, right? 924C says use of a firearm in connection with a commission of a crime. That's correct, but Mr. Witted's conviction says 80 in the bedding. And to answer the question about the other cases, raising Rosemont and Pinkerton, those other cases are crimes of violence. The firearm there is either used, it's brandished, or it's discharged. There's all evidence of advanced knowledge. So then you know that any error was harmless. You have discussions about killing an informant, shooting stash house guards, bringing a gun to a robbery or planning an execution. Those are all the scenarios in which courts have found that Rosemont error is harmless. And I thought that Harris had testified with some detail that he regularly carried a firearm when purchasing cocaine, and that Witted was well aware of that. And, in fact, used a firearm in connection with this particular crime. You're correct, but that's the other evidence here. And, again, when you don't only draw inferences in the government's favor, the other evidence based on that testimony is that Mr. Witted had no reason to know that Harris would have a gun with him in that hotel room because there was no evidence presented that there was a purchase of cocaine made in that hotel room. And we also have Mr. Witted, which is not contradicted by Mr. Harris, saying Witted always asked Harris or usually asked Harris whether he had his gun on him because Witted didn't want to be with Harris and his gun. Witted didn't want to be around the gun. And Mr. Witted, there's no evidence at trial that Mr. Witted asked Harris or had any knowledge whatsoever that Harris would have his gun with him that day. Was it reasonably foreseeable to him that the co-defendant would have a weapon? Well, that's exactly what I'm saying, is on the direct appeal opinion, when you draw the piece of evidence that Judge Sirica just mentioned and you make an inference in the government's favor, then, yes, that's why the court decided on direct appeal that there's sufficient evidence. But here, what you do is you look not just with an inference in the government's favor, but you step back and you look at the bigger picture and you see that there's no evidence that Witted knew there was a gun. There's no evidence that Witted asked Harris that day if he had his gun. And you see Harris saying, yes, I had my gun when I made purchases of cocaine, but you have no evidence that's presented at trial that Witted was with Harris when that purchase of cocaine was made. That's a separate issue than what happened when Witted walked into that hotel room. Okay. What about the factual finding, in effect, the court made, that despite the issue of whether the instructions were actually there, it wasn't noted on any kind of docket sheet, but the court found that it made a determination that, in fact, it was there. How do we overturn that? Where's the clear error? Well, Your Honor, I'd ask you to imagine what would have happened had the court held a hearing and had Mr. Witted had counsel who could have contested the government's evidence and challenged the assertion that this form is available in every single BOP institution, that everybody at that institution has access to the form or could even go online and access that form, and that because this clerk said that he or she sends that form out to everybody, that means, number one, that that person sent it to Mr. Witted and it contained the instructions, and then Mr. Witted actually received it. Those are all, that's exactly what the district court does. It hears evidence, it takes testimony, and then it makes an appropriate weight, and that's also exactly what the Seventh Circuit said in Witt v. Clements. And then, to me, the final issue is, and maybe we can deal with it when you get back on rebuttal, is it's not even still good law in light of Plyler. Yes. I'll address it now and then I'll address it again, Your Honor, on rebuttal. Castro sets a floor and says you have to give notice before you recharacterize, and then in Plyler, the Supreme Court says you can't require a district court to give case-specific advice, make case-specific statute of limitations calculations that, number one, could result in either bad advice, or number two, would require district courts to wait outside the four corners of the petition. So I submit, Your Honor, that the opinion, that this court's opinion in Miller is still good law and that Miller is the best and most practical way of implementing the notice directed in Castro. Thank you. Thank you. We'll get you back on rebuttal. Thank you. Mr. Zosmar. Thank you, Your Honor. Good morning. I'm a police reporter. Robert Zosmar, along with Officer Estolfi, on behalf of the government. As Judge Ambrose suggested, there are a number of paths here to affirmance. The simplest, in our view, as we expressed in our brief, is simply the fact that there was no Rosamond error. It's explicitly clear in the jury instructions that were given at the trial that Mr. Wittig was convicted based on a Pinkerton theory. I do want to correct one citation in our brief with regard to these very important jury instructions. We cited the original appendix from 2007, which we provided to the court at its request. But there's an odd mistake we saw more recently in that appendix, in that every other page is missing in the jury instructions that was created by the appellant. But we also supplied the 2009 appendix, and there the jury instructions are presented in full at pages 139 to 144 of the appendix. And if you look at those pages, you see that the court began with count 16, which is the substantive crime of possession of narcotics with intent to deliver. The court instructed on the substantive offense and then said, there's one more way to violate count 16, and that's aiding and abetting, and then gave the standard aiding and abetting instruction. On page 142 of the appendix, the court turns to count 17, which is the 924C charge that we're dealing with here. It correctly explains what a 924C offense is, and then it says, there's one more way to violate count 17, and that's Pinkerton. And the court proceeds word for word to give this court's approved Pinkerton instruction. There is no ambiguity here whatsoever. This conviction rested on Pinkerton. This court so found on direct appeal and then said that the evidence was sufficient. It's true, as my able colleague says, the court referred to this as an aiding and abetting conviction. That's a throwaway statement that doesn't fit with the holding in this case or with the actual jury instructions that we have here. One interesting thing I'll say, because I think I have a moment, is that we've never reached the question in this case of what would happen under Rosemond if there were an aiding and abetting charge here that was presented regarding count 17. In fact, there would be no error there either, because if you go back a page and look at the aiding and abetting instruction that the court only gave for count 16, that also was this standard's model instruction. And it actually comports with Rosemond. In fact, I think your honors are aware, I don't believe we've had any case in this circuit in which a 924C aiding and abetting conviction was overturned as a result of Rosemond. And the reason is because this court's model instruction outdid Rosemond. It's been adjusted so we're perfectly in line with the Supreme Court. But what this court's model instruction always said about aiding and abetting was you have to know that the offense is going to be committed. You have to intend that the offense is going to be convicted. That's Rosemond. And then further said, you have to take some act to further the offense. Rosemond makes clear that that's not necessary. As long as you know the gun is going to be used and you intend to help with the underlying predicate crime under Rosemond, that's sufficient mens rea. So if we were here to defend this conviction under aiding and abetting, we would do it. I haven't made this argument until now in hearing my colleague just because this wasn't submitted on an aiding and abetting theory. Let me look backwards, if I may. Go ahead. There is a question as to whether Miller is overridden by Plyler. What are your thoughts? I think it's manifestly clear that that part of Miller is overruled. And interestingly, the part of Miller that is abrogated was dictum to begin with. The notion that even a pleading that is captured under Section 2255, that the defendant should receive notice, that was really not an issue in Miller. Miller involved a defendant who submitted motions with all sorts of other names, like motion for new trial. And what this court held is you can't recharacterize that as a 2255 without giving him the warning. That add-on where this court added, and you should give notice in any case, even if it's captured under 2255, that was unique to this court. No other circuit adopted that requirement, and certainly the Supreme Court didn't in Castro. And then we have Plyler come along, and Plyler makes this abundantly clear that it's not the court's job to give advice to a defendant who has chosen to proceed under a particular law. Whatever a defendant files, whether if you're pro se, it's more difficult. We all know that. And if you're filing a complaint or an answer or a motion, there will be all sorts of rules that apply, and it's incumbent on a pro se individual to learn the best he or she can and proceed. It was interesting listening this morning to Ms. Leavitt say how even the form, and we'll get back to whether he actually got it or not, but the standard form that's given out in this district and, in fact, throughout the country, she says even that's not adequate. It's saying, caution, you must include all your claims is not good enough because the court should add, and if you don't, here's exactly what you're limited to under 2255-8.  Once you head down this road, the court is leaving its judicial role. It needs to become some sort of aid to one of the parties in explaining the law, and I assume we would go further. If you look at 2255-H, at the limitations on a second successive petition, we know it means a new claim of innocence or a new rule of constitutional law. I could spend 10 minutes here or more explaining to a pro se individual what is a new rule of constitutional law made retroactive by the Supreme Court. You can't explain Teague and whatnot in 25 words or less? No, I can't. Your honors are very good at that, but that goes beyond my abilities in my brief, I think. We've never done 25 words or less on anything. So Plyler is very clear. This is not the court's job. What is the court's job in this limited exception under Cashcrow and Miller is where you're recharacterizing the petition. You're saying to the litigant, yeah, I got your petition here with one name on it. I'm going to put a different name on it, which has legal consequences I'm not going to tell you about. That's this very narrow exception to the rule. But I think it's manifestly clear at this point that Plyler does overrule Miller only with respect to what was dictated in Miller, whereas here it was captured under 25. What does the standard form say now? Well, the standard form, actually I pulled up a copy online yesterday to confirm that the Eastern District of Pennsylvania still has not changed its form since it started. It says 2009, but this is what was originally authored by Judge Ray Antwerpen in 2001 when he was the head of the criminal committee for the district court. It's now a page and a half long, the instructions. It both gives the caution and says you may be limited if you don't present all your claims now, and it spells out the statute of limitations. You have one year. It then repeats that, the one-year statute in full. One of the interesting things is you can get this online if you're in a different district. You can go online to the administrative office, which has essentially the same form, and accept that the instructions there are shorter. Apparently whoever, this court's form was very influential, but even they thought it was too much, and so theirs has the caution but not the quotation of the statute of limitations. And what about other districts in the Third Circuit? Other districts, I believe, are using the AO form. This form is clearly labeled as PAE, Eastern District of Pennsylvania, and that, by the way, is what shows that Mr. Whitted did get this form. What he submitted may be missing the first two pages, which are the instructions, but if you look at the top of every page, this is docket number 675, the 2255 motion he filed in 2012. Top of every page, PAE 243 or whatever this number is. He had these, Ms. Levin says, well, how do we know he got it? I want to cross-examine all these people. It is the form. He submitted his 2255 motion on the Eastern District form. And so the only question is, did he have those first two pages? And what the district court heard was that the clerk, this is what she sends out. It's the entire form. It goes to every prison. It's available online. It was available online in 2012. And so, as we know, there's a presumption of regularity here in government affairs. The court may sit standing on the presumption of regularity. I think, yes, I think that's a fair way to say it, Your Honor. And so in that circumstance, it's not enough for Mr. Whitted simply to say, oh, look, the two pages aren't in what I filed, therefore I didn't receive it. It's true that he could get a hearing, but to get a hearing as a heinous litigant, you need to put forward some evidence to show that something amiss happened here. And what we see here is he's using the exact form, and even the form he's using may not repeat the instructions word for word, but it repeats much of it again within the form. I'll point out one thing. In the 2012 motion he filed under Section 2255, one of the questions that's asked is, are you within the one-year limit? And once again, in the form which he submitted, there's a footnote that quotes the entire one-year limit in full. And when he wrote down, this was on page 13 of his form, when he's asked, how are you satisfying the statute of limitations, he said, quote, this motion is timely as the case was vacated, remanded to the district court for resentencing, and the one-year AEDPA provision does not apply in this instance, end quote. And he's exactly right. He got the notice, he understood the notice, and he did a pretty capable job of presenting his pro se petition. As Judge Ambrose said, there are many ways to decide this case. Would it be useful to have a presidential opinion outlining what is the requirement, at least in light of the new Supreme Court opinions? I think it certainly would be useful. This is one of those cases that I maybe too colloquially sometimes refer to as a just tell us the rules case. It will save the district courts a lot of work. We learn from this court what the rules are, and I think it would be very helpful to have an opinion. The district court in Eastern District of Pennsylvania went to some trouble creating this form, and as I said, I think it was fairly influential. And it was a really smart idea, which, again, I attribute to Judge Van Antwerpen, to avoid a trap that a court might find itself in, which is to require every time that the person get the form, answer the questions, see the instructions, and thus satisfy the requirement, even if the requirement existed. I think it would be very helpful to know that you're not going to get reversed based on some little mistake if the person decided to caption it under 2055. But we also have the confidence that the court is going to continue to use this form, which is now used in some version nationally. But, yes, it would be very helpful. And then, again, this is a case in which there is a simple resolution also just based on the merits. Unless the court has further questions, I will not go over my time today. Thank you, sir. Thank you. Ms. Levin. Thank you. Going right to the Plyler and the Miller question. There's nothing about the dicta in Miller that this applies no matter whether the form is initially styled as a 2255 that requires anything that contradicts what's in the Supreme Court's opinion in Castro. There's no case-specific calculations. There's no advice given that could be bad. And there's no reason for a district court to wait outside the petition itself. The court in Castro cites nine circuits who follow the approach that's ultimately adopted by the Supreme Court. This court's decision in Miller is one of them. And Miller, by the way, followed the approach by the Second Circuit in Adams. And the one difference between Adams and Miller, again, is that the notice applies without first considering the form of the filing. And that's not a distinction that runs afoul of Castro. It's not a distinction that's implicated in Plyler. And it's not a distinction that's at all recognized by other court of appeals cases that are citing Miller, citing Adams. And, by the way, the Second Circuit also is not revisiting its holding in Adams in light of Plyler. Now, the most important piece here and the best way for this court to move forward is to reaffirm the procedure that was announced in Miller and to find that there was no evidence on the docket to show that Mr. Woodard received notice consistent with Miller. We're way beyond Miller. You've got to say that we're reasserting Miller despite Plyler for X, Y, and Z reasons. What are they? The reasons are exactly what I've said, that there's nothing about what's in Miller that conflicts with the restrictions in Plyler about when you can't require a district court to do something. You can't require a district court to go deep and to give advice about whether or not a petition will be time barred when that petitioner comes back to court. You can't require a district court to figure out exactly what that means. And you can't require a district court that could do anything that emphasizes one course over another. And I think this court's opinion, although it's not a published opinion, in Holding v. Meshling, that's in the reply brief, is really the best example of how Miller notice does not conflict with Plyler because the court is saying that after the district court provided that notice, it had no further obligation to advise the petitioner one way or the other. And that, I think, is really the only decision from this court that's grappling with Miller in light of Plyler, albeit in the non-published opinion context. But that's what I think is most applicable. I have no idea why Sperato and Stubbs were NPOs. But the problem here is that there was a, as our previous case dealing with Mr. Wood said, that there was an instruction that was given in connection with Pinkerton. Was there not? There was instruction that was given in connection with Pinkerton, yes, but there's a conviction, again, for aiding and abetting. We wouldn't be here, I think, on the certificate of appealability if it were that simple, if reasonable jurists can't decide. The argument against that is there's a conviction for 924C violation. It's right in the judgment spelling out exactly what the basis for that 924C conviction is, which is aiding and abetting. And had that been one or the other, and clearly Pinkerton was given. In other words, is this the right set of facts to try to get to the what are the rules gang type of opinion? Well, I think it's the right set of facts because unlike all those other cases where you don't really have to decide the issue, this case shows that there would have been something different had a Rosemont instruction been given because there is not underlying evidence to support advanced knowledge. And I think the Third Circuit has changed its model jury instructions from that time to add in that requirement post-Rosemont. So I think that had that Rosemont instruction been given, the court can't be confident the verdict would have been the same, and it must be either sure or only have a very slight risk of influence on the jury. And it cannot do that here because there's not evidence of advanced knowledge of the guns recognized by the district court. So I'm asking you to find not only that Miller continues to apply, but that Mr. Woodard did not receive Miller notice, and that remand is appropriate for a new trial in light of Rosemont. Thank you. Thank you. Thank you very much. Thank you both counsel for well-presented arguments, and we'll take the matter into advisement.